UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LADONNA LOMELI and JOHN FRANKLIN JR.<br><br>PLAINTIFFS<br><br>v.<br><br>UNITED PARCEL SERVICE COMPANY, a foreign corporation authorized to do business and doing business in California,<br><br>DEFENDANT | Case No. **'25CV422  BEN AHG**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, PUNITIVE DAMGES, RESTITUTION AND INJUCTIVE RELIEF** |

Plaintiffs, on behalf of themselves individually, as a citizen of the United States, and on behalf of all citizens of the United States who are similarly situated, allege as follows:

**NATURE OF THE ACTION**

1. Plaintiffs' allegations herein are based upon personal knowledge and belief as to their own acts, upon the investigation of their counsel and on information and belief as to all other matters. Plaintiffs brings this action against Defendant United Parcel Service Company to recover damages, punitive damages, restitution, and injunctive relief on behalf of themselves and others similarly situated. Plaintiff Ladonna Lomeli is a citizen of the United States who is presently domiciled and presently residing in the State of California and who has in the recent past had parcels shipped by Defendant United Parcel Service Company (hereinafter UPS). Plaintiff John Franklin Jr. is a citizen of the United States who is presently domiciled and presently residing in the State of California and who has in the recent past had parcels shipped by Defendant UPS.  Plaintiffs seeks to represent one or

1

more classes of UPS customers who are also citizens of the United States and who have been domiciled and have permanently resided in the United States between January 1, 2015 and the present time, and who have utilized the services of UPS.

2. Defendant UPS is a Delaware Corporation, headquartered in either Atlanta, Georgia or Louisville, Kentucky. Plaintiffs are informed and believe that Defendant UPS is the world's largest package delivery company, and in 2012 delivered an average of 16.3 million packages per day worldwide or yearly total of almost six billion packages per year. As a substantial part of the business of Defendant UPS it utilizes third-party retailers who purchase shipping labels at a reduced rate from UPS and who then resell those shipping labels to customers who have a package that they wished to ship to a third-party. In many instances, the customer of the 3rd party retailer will choose to purchase the shipping label of Defendant UPS as the delivery company to deliver his or her package. The UPS stores are independent third-party retailers that can provide UPS shipping labels to customers who choose to have Defendant UPS deliver the package. Another third-party retailer is a company named PirateShip. Plaintiffs and many other customers of PirateShip purchase UPS shipping labels from PirateShip. Customers of third-party retailers such as PirateShip weigh and measure the packages that they intend to ship by way of the UPS delivery service. Plaintiffs and other customers of third-party retailers such as PirateShip provide this weight and measuring information to the third-party retailer. The third-party retailer, such as PirateShip, has an arrangement with Defendant UPS by which PirateShip is provided special shipping rates that would be lower than the normal shipping rates for the UPS delivery service. When the packages of Plaintiffs and other customers similarly situated are presented to the third-party retailer, such as PirateShip, there is a program

which records the appropriate shipping charge for each package to be shipped through the UPS delivery service.

3. Plaintiffs and other customers of a third-party retailer similarly situated are required to provide credit information to the third-party retailer which can then be charged for the appropriate UPS shipping charge for each package shipped.

4. Beginning at a time unknow to Plaintiffs and members of the Plaintiff class, Defendant UPS has engaged in a practice of intentionally overcharging third party retailers for packages of its customers that it provided to Defendant UPS for shipment by adding surcharges that should never have been charged. When these surcharges are brought to the attention of the third-party retailer, such as PirateShip. The third-party retailer passes the surcharge onto to its customers by charging their credit cards.

5. The customers of the third-party retailers may or may not discover that Defendant UPS has overcharged them for its delivery service, depending upon how closely the Plaintiffs and members of the Plaintiff class monitor their credit card bills. There have been occasions where members of the Plaintiff class have complained to the Defendant UPS that Defendant UPS has overcharged them for its delivery service. In responding to those complaints, Defendant UPS has refunded to the customer the amount of its intentional overcharge. Plaintiffs and members of the Plaintiff class contend that the refund of the overcharge is an admission of intentional wrongdoing by Defendant UPS.

As a result of the Defendant's intentional overcharges of customers of third-party retailers such as PirateShip, Plaintiffs and members of the Plaintiff class have suffered a substantial loss of money and/or property and/or value. Plaintiffs and members of the Plaintiff class have suffered injury, in fact, incurred damages, and otherwise have been harmed by the conduct of Defendant UPS.

6. Accordingly, Plaintiffs brings this action to address claims against Defendant UPS for conversion, restitution based upon unjust enrichment, quasi contract, money had and received, and violations of California's unfair competition law (UCL).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to diversity of citizenship as established by 28 U.S.C.§1332(a), and the Class Action Fairness Act of 2005, 28 U.S.C.§1332(d). There are one hundred or more class members, and Plaintiffs are informed and believe that there is an agreed amount in controversy that exceeds five million dollars, inclusive of interest and costs, and there is minimal diversity because at least one Plaintiff and one Defendant are citizens of different states. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.§1367.

8. Venue properly lies in this judicial district pursuant to 28 U.S.C.§1391 because Defendant UPS transacts business in this district and is subject to personal jurisdiction in this district. Additionally, Defendant UPS has advertised in this district and has received substantial revenue and profits from its services in this district. Therefore, a substantial part of the events and/or emissions giving rise to the claims herein occurred, in part, within this district.

## THE PARTIES

9. Plaintiff Ladonna Lomeli is a citizen of the State of California. Plaintiff John Franklin Jr. is a citizen of the State of California.

10. Defendant UPS was incorporated in the State of Delaware and maintains its principal place of business at either 1400 North Hurstbourne Parkway, Louisville, Kentucky 40223 or at 55 Glenlake Parkway ND, Atlanta, Georgia 30328.

## JURISDICTION AND VENUE

11. This court has jurisdiction over this matter pursuant to diversity of citizenship under 28 U.S.C.§1332(a). In addition, the court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§1332(d), the Class Action Fairness Act of 2005, because (a) there are one hundred or more class members, (b) Plaintiffs are informed and believe that there is an amount in controversy exceeding five million dollars, exclusive of interest and costs, and (c) there is minimal diversity because at least one Plaintiff and the Defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.§1367.

12. Venue properly lies in this judicial district pursuant to 28 U.S.C.§1391 because Defendant UPS transacts business in this district and is subject to personal jurisdiction in this district. Additionally, Defendant has advertised in this district and has received substantial revenue in profits from its delivery of packages in this district; therefore, a substantial portion of the events giving rise to the claims herein occurred in part, within this district.

## CLASS-ACTION ALLEGATIONS

13. This action is brought, and may properly proceed, as a class action, pursuant to Rule 23(a) and Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

14. Plaintiffs seeks certification of a Nationwide class defined as follows: any person in the United States who purchased a UPS shipping label from a third party retailer, such as PirateShip, who was then overcharged by Defendant UPS for the costs of the package delivery by Defendant UPS by the utilization of one or more surcharges which said person was required to pay, and where the overcharge occurred within the last nine years.

15. Plaintiffs reserve the right to modify the class description and the class period based upon the results of discovery, and further reserves the right to define subclasses.

**Numerosity**

16.   The proposed class is so numerous that individual joinder of all its members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Defendant, and obtainable by Plaintiffs only through the discovery process, Plaintiffs allege, on information and belief, that there are over one hundred thousand class members. Class members are widely disbursed all over the United States. Multiple individual actions would place undue burden on the judicial system, and therefore, the disposition of the claims of class members in a single class action will provide substantial benefits to all parties and the court.

**Predominance of Common Questions of Fact and Law**

17.   Common questions of law and fact exist as to all members of the Class. These questions substantially predominate over any questions affecting individual Class members. Common questions of fact and law include but are not limited to the following:

(a)   whether Defendant UPS engaged in the conduct alleged herein; (b) whether UPS had an established practice of intentionally overcharging class members for the cost of the delivery of class member's packages; (c) whether a class member suffered the same type of injury through the practice of Defendant UPS in intentionally overcharging members of the Plaintiff class for the costs of package delivery; (d) whether Defendant UPS was unjustly enriched when it intentionally overcharged members of the Plaintiff class for package delivery cost; (e) whether members of the Plaintiff class were entitled to obtain restitution from Defendant UPS as a result of being overcharged for UPS package delivery costs; (f) whether members of the Plaintiff class have the same claim for restitution against Defendant UPS; (g) whether members of the Plaintiff class have the same claim in Quasi

Contract against Defendant UPS based upon the facts alleged in the complaint; (h) whether members of the Plaintiff class have the same claim for a conversion against the Defendant based upon the facts alleged in the complaint; (i) whether members of the Plaintiff class have the same claim for money had and received against Defendant UPS based upon the facts alleged in the complaint; and (j) whether members of the Plaintiff class have the same UCL claim against Defendant UPS based upon the facts alleged in the complaint.

### Commonality

18. The claims of the class representatives are typical of the claims of the class. The claims of the class representatives against the Defendant UPS are based on roughly the same legal bases as the claims of the putative class members that the class representatives seek to represent.

### Adequacy of Representation

19. The class representatives are adequate representatives for the members of the class because their interests do not conflict with the interests of the class that they seek to represent. The class representatives will fairly and adequately represent and protect the interests of the class. The interests of the class representatives and the members of the class are aligned so that the class representative will find it easy to work for the benefit of the entire class in the pursuit of their own goals. The class representatives have retained counsel who are highly experienced in complex class action litigation. The class representatives and their counsel are committed to pursue this action on behalf of the class, and neither the class representatives nor their counsel have any interest adverse to those of the class.

### Superiority of a Class Action

20. A class action is superior to all other available means of fair and efficient adjudication of the claims of the class representatives and members of the Plaintiff class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense associated with the individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for them to go to trial individually to redress effectively the wrongs done to them by the Defendant. Even if class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would cause increased delay and increased expense for all parties and to the court system presented by the complex, legal and factual issues of the case. By contrast, the class action device presents far fewer difficulties, and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the class are easily ascertainable.

## CLAIMS FOR RELIEF

## COUNT I

### CONVERSION

21. Plaintiffs incorporate by reference paragraph one through paragraph 20 of this complaint as though fully set forth at length herein.

22. The relevant facts in this case are nearly identical for each Plaintiff and each member of the Plaintiff class. The Plaintiffs set forth those facts below.

23. Defendant UPS is the largest package delivery company in the world. As part of its business model, Defendant UPS uses third-party retailers such as PirateShip for the purpose of providing UPS shipping labels to persons wishing to ship packages utilizing the UPS delivery system. The third-party retailers are independently owned and operated

businesses. The third-party retailers typically have negotiated special shipping rates with several Shipping Companies, including Defendant UPS. These special shipping rates are typically much lower than the standard rates charged by the respective Shipping Companies for their delivery services.

24. The Plaintiffs and members of the Plaintiff class as customers of the third-party retailers, purchase shipping labels from the third-party retailer and obtain the special shipping rates that the third-party retailers have obtained from Defendant UPS. The third-party retailer requires its customers to provide a credit card account to which the third-party retailer charges the cost of each UPS shipping label.

25. In the overwhelming majority of cases a class member weighs and measures his or her package in order to obtain the appropriate cost for the delivery of the package by the UPS delivery system. The third-party retailer then charges the class member's credit card for the cost of the UPS delivery by way of the UPS Shipping Label.

26. Beginning at a time unknow to the Plaintiffs, Defendant UPS has engaged in the unlawful practice of intentionally overcharging class members who have obtained UPS shipping labels through one or more surcharges. The third-party retailers then pay UPS the amount of the surcharges, after which the third-party retailers then charge the credit card account of class members. In order to recover the amount of the intentional overcharge.

27. The class member owned and had a right to possess the amount of intentional overcharge. Defendant UPS substantially interfered with the class member's property by knowingly or intentionally taking possession of the class member's money. Thereby depriving the class member of access to the specific sum of money. At no time did any class member consent to these intentional overcharges by Defendant UPS.

28. Each class member was harmed by the loss of a specified amount of money and the conduct of Defendant UPS was a substantial factor in causing harm to the class members. In addition, class members have suffered emotional distress as a result of the foregoing conduct of Defendant UPS.

29. In engaging in the wrongful conduct alleged hereinabove, the Defendant acted maliciously, fraudulently, oppressively, and in conscious disregard of the rights of the Plaintiffs and members of the Plaintiff Class. As a consequence, Plaintiffs and members of the Plaintiff Class are entitled to an award of exemplary and punitive damages as determined by a jury.

## COUNT II

### RESTITUTION BASED UPON UNJUST ENRICHMENT

30. Plaintiffs incorporates by reference paragraph 1 through 29 of this complaint sets forth at length herein.

31. When Defendant UPS intentionally overcharged Plaintiffs and each member of the Plaintiff class for its delivery service, said Defendant received a benefit in the amount of the intentional overcharge. Defendant UPS was enriched when it received the amount of the intentional overcharge at the expense of the Plaintiffs and members of the Plaintiff class.

32. Defendant UPS has unjustly retained the benefit of its intentional overcharges at the expense of the Plaintiffs and members of the Plaintiff class. Thus, Defendant UPS is not entitled to retain the benefit of the intentional overcharges, and must return the amount of the intentional overcharges to the Plaintiffs and members of the Plaintiff class so as not to be unjustly enriched.

33. Plaintiffs and members of the Plaintiff class have suffered monetary injury as result of the intentional misconduct of Defendant UPS, and Plaintiffs and members of the

Plaintiff class are entitled to restitution from Defendant UPS of the amount of the intentional overcharges taken from Plaintiffs and members of the Plaintiff class.

## COUNT III

### QUASI-CONTRACT

34. Plaintiffs incorporate by reference paragraph 1 through 33 of this complaint as though fully set forth at length herein.

35. As a result of the conduct of Defendant UPS in intentionally overcharging Plaintiffs and members of the Plaintiff class for the delivery of their packages, Defendant UPS obtained a benefit to which it was not entitled. In essence, Defendant UPS unlawfully obtained a benefit from the Plaintiffs and members of the Plaintiff class by stealing specific sums of money through the process of intentional overcharges for the delivery of the packages of Plaintiffs and members of the Plaintiff class.

36. Defendant UPS knew that it was unlawfully taking specific sums of money from Plaintiffs and members of the Plaintiff class in the form of intentional overcharges for its services. As a result, Defendant UPS has been unjustly enriched at the expense of the Plaintiffs and members of the Plaintiff class. Plaintiffs and members of the Plaintiff class are entitled to have restored to their possession the amount of these intentional overcharges by Defendant UPS. Thus, Plaintiffs and members of the Plaintiff class are entitled to restitution of the amount of money accumulated by Defendant UPS as a result of its practice of intentional overcharges for its delivery services.

## COUNT IV

### COMMON COUNT: MONEY HAD AND RECEIVED

37. Plaintiffs incorporate by reference paragraph 1 through 36 of this complaint as though fully set forth at length herein.

38. Defendant UPS has received money through unlawful means that was intended for the benefit of Plaintiffs and members of the Plaintiff class. That money has not been used for the benefit of the Plaintiffs and members of the Plaintiff class and remains in the possession of Defendant UPS. Defendant UPS has not returned the money to the Plaintiffs and members of the Plaintiff class even though in equity and good conscience, and in justice and right should be returned to the Plaintiffs and members of the Plaintiff class. Thus, Defendant UPS was indebted to the Plaintiffs and members of the Plaintiff class in a certain sum for money had and received by the Defendant for the use of the Plaintiffs and members of the Plaintiff class.

39. Plaintiffs and members of the Plaintiff class seek restitution from Defendant UPS of the specific amount of money that Defendant UPS unlawfully obtained from them.

### COUNT V

**VIOLATION OF THE FAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code, *et seq.* §§ 17200)**
**("UCL")**

40. Plaintiff incorporates by reference paragraph 1 through 39 of this complaint as though fully set forth at length herein.

41. The UCL prescribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (B&P § 17200)

42. The conduct of Defendant UPS, as set forth herein, is a violation of the UCL because that Defendant has unlawfully committed theft in violation of California Penal Code §484. Defendant's conduct is also an unfair business practice because Defendant

UPS has intentionally overcharged Plaintiffs and members of the Plaintiff class for the costs to deliver their packages.

43. The amount of the harm resulting from said Defendant's unfair conduct outweighs any potential utility of said conduct. The practice of intentionally overcharging Plaintiffs and members of the Plaintiff class for the costs of delivering their packages is clearly a common and uniform course of wrongful conduct.

44. The conduct of Defendant UPS is also fraudulent and deceptive in violation of the UCL because said Defendant knowingly and intentionally concealed from Plaintiffs and members of the Plaintiff class the fact that they were intentionally overcharging Plaintiffs and members of the Plaintiff class for the costs of delivering their packages.

45. Accordingly, Plaintiffs and members of Plaintiff class have suffered injury in fact, including lost money or property, as a result of the Defendant's unlawful, unfair and fraudulent conduct.

46. Plaintiffs seek to enjoin further unlawful unfair and/or fraudulent conduct of these practices by the Defendant under the UCL. Plaintiffs request that this court enter such orders or judgments as may be necessary to enjoin Defendant UPS from continuing its unfair, unlawful and/or deceptive practices and to restore to Plaintiffs and members of the Plaintiff class any monies Defendant acquired in violation of the UCL, including restitution of all monies that said Defendant illegally acquired from Plaintiffs and members of the Plaintiff class.

**Prayer for Relief**

**THEREFORE,** Plaintiffs, on behalf of themselves and all others similarly situated, hereby request that this court enter an order and judgment against Defendant UPS providing the following:

1. Certification of proposed Class and/or Subclass, appointment of Plaintiffs and their counsel to represent the proposed Class, and notice to the proposed Class to be paid by Defendant;

2. To permanently enjoin Defendant UPS from continuing to engage in the type of unfair, unlawful and/or deceptive business practices alleged herein;

3. For general damages according to proof;

4. For restitution according to proof;

5. For an award of punitive damages;

6. For an award of attorney fees and costs;

7. For special damages according to proof;

8. For an order requiring Defendant to pay both pre and post-judgment interest on any amount awarded;

9. For such other or further relief as may be appropriate.

## JURY DEMAND

Plaintiffs on their own behalf and behalf of the Plaintiff class hereby request a trial by jury.

///

///

///

///

**February 26, 2025**

*/s/ J. David Franklin*
J. David Franklin (CBA No: 41659)
LAW OFFICES OF J. DAVID FRANKLIN
2127 Caminito Circulo Norte,
La Jolla, CA 902037
Phone: (858) 459-9178
e-mail: jdfranklaw@san.rr.com
Counsel for Plaintiffs


Anthony A. Ferrigno, Esq. SBN 61104
LAW OFFICES OF ANTHONY A. FERRIGNO
3445 Golden Gate Way
Lafayette, CA 37919
Phone: (423) 744-4041
e-mail: A-trust-fraudlaw@msn.com
Counsel for Plaintiffs


Pamela E. Havird, Esq,
PAMELA E. HAVIRD,
A PROFESSIONAL CORPORATION
P, O. Box 375
La Jolla, CA 92038-0375
Phone: (619) 888-8090
e-mail: pehavird@att.net
Counsel for Plaintiffs